IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

R.M.C., §
§
Plaintiff, §
§ Civil Action No. 3:10-CV-1538-D
VS. §
§
MICHAEL J. ASTRUE, §
COMMISSIONER OF SOCIAL §
SECURITY, §
§
Defendant. §

<u>MEMORANDUM OPINION</u>

Plaintiff R.M.C.[1] brings this action under § 205(g) of the
Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial
review of the final decision of the Commissioner of Social Security
("Commissioner") denying her application for supplemental security
income ("SSI") benefits under title XVI of the Act, 42 U.S.C.
§ 1382c. For the reasons that follow, the Commissioner's decision
is affirmed.

I

Shantel Durodoye ("Durodoye"), R.M.C.'s guardian, filed an
application for SSI benefits for R.M.C. on August 6, 2007, alleging
a disability onset date of May 26, 2004, R.M.C.'s date of birth.
R.M.C. was three years old at the time of the application. Her
claim was denied initially and upon reconsideration, and Durodoye
requested a hearing. Durodoye and R.M.C. appeared and testified at

_____

[1]Fed. R. Civ. P. 5.2(a)(3) provides for the use of a minor's
initials.

a hearing before an Administrative Law Judge ("ALJ") on February 19, 2009, at which time R.M.C. was four years old. R.M.C. is classified under 20 C.F.R. § 416.926a(g)(2)(iii) (2011) as a preschool child. The ALJ found that R.M.C. was not disabled.

At the hearing, Durodoye testified that R.M.C. was born with cocaine in her bloodstream because her biological parents were addicted to drugs. She also testified that child protective services took possession of R.M.C. until they completed a home study concerning Durodoye, who was named R.M.C.'s guardian when R.M.C. was 2½ months old. R.M.C. and Durodoye were in a car accident when R.M.C. was 13 months old. When R.M.C. was three years old, Durodoye noticed that she was hyperactive and aggressive and arranged for a social worker to evaluate her for Attention Deficit Hyperactivity Disorder ("ADHD").

In her decision, the ALJ followed the three-step sequential process of 20 C.F.R. § 416.924 (2011) for determining whether R.M.C. is disabled. At step one, the ALJ found that R.M.C. has not engaged in substantial gainful activity at any time relevant to the decision. R. 12. At step two, the ALJ found that R.M.C. has a severe combination of impairments, including ADHD, developmental delay, and asthma. R. 12. At step three, the ALJ found that R.M.C. does not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R.

12. Specifically, the ALJ determined that R.M.C. had no limitation in acquiring and using information, moving about and manipulating objects, and caring for herself. R. 14-17. The ALJ also determined that R.M.C. had less than marked limitation in attending and completing tasks, interacting and relating with others, and health and physical well-being. R. 14-17.

R.M.C. sought review by the Appeals Council, which denied review, and the ALJ's decision thus became the final decision of the Commissioner. R.M.C. seeks judicial review on the following grounds: (1) the ALJ's finding that R.M.C. was not markedly limited in at least two domains is not based on substantial evidence; (2) the ALJ's finding that R.M.C. did not meet criteria for listing 112.11 (ADHD) is not based on substantial evidence; and (3) the ALJ erred as a matter of law because she did not perform the required credibility analysis.

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the

Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). Even if the court determines that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this

court.  *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact.  The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history.  *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.*  Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that [she] was prejudiced." *Id.*  The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.  *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

For purposes of social security determinations,

> [a]n individual under the age of 18 shall be
> considered disabled for the purposes of [the
> Act] if that individual has a medically
> determinable physical or mental impairment,
> which results in marked and severe functional
> limitations, and which can be expected to
> result in death or which has lasted or can be
> expected to last for a continuous period of
> not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a claimant under the age of 18 is disabled, the Commissioner uses a three-step inquiry. 20 C.F.R. § 416.924(a). First, the Commissioner determines whether the child has engaged in substantial gainful activity. Second, the Commissioner determines whether the child has an impairment or combination of impairments that is severe. Third, the Commissioner determines whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924(a). If the Commissioner finds that the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment, and such impairment meets the duration requirement, the Commissioner will find that the child is disabled. *See id.*

To determine whether a child has an impairment or combination of impairments that functionally equals a listed impairment, the

Commissioner assesses the child's functioning in terms of six domains pursuant to 20 C.F.R. § 416.926a(b)(1): (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. *Id.* The ALJ is to determine how appropriately, effectively, and independently the child performs her activities compared to the performance of other unimpaired children of the same age. *See* 20 C.F.R. § 416.926a(b).

An impairment or combination of impairments functionally equals a listed impairment if it is of listing-level severity, which requires a "marked" limitation in two domains or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(d). A marked limitation is one that interferes seriously with the child's ability to independently initiate, sustain, or complete activities. A marked limitation is more than moderate but less than extreme, and is the equivalent of the functioning expected on standardized testing with scores at least two, but fewer than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2). An extreme limitation is one that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked, and is the functional equivalent of standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R.

§ 416.926a(e)(3).

R.M.C. contends that the ALJ's finding that she is not markedly limited in at least two domains is not based on substantial evidence.[2]  The ALJ determined that R.M.C. has no limitation in acquiring and using information, moving about and manipulating objects, and caring for herself, and that R.M.C. has less than marked limitation in attending and completing tasks, interacting and relating with others, and health and physical well-being.  R. 13-19.  R.M.C. argues that the record contains

---

[2]In her reply, R.M.C. cites *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), and *Cole ex rel. Cole v. Barnhart*, 288 F.3d 149 (5th Cir. 2002) (per curiam), and argues that the Commissioner cannot defend the ALJ's decision based on evidence that the ALJ did not mention in the decision.  "It is well-established that [the court] may only affirm the Commissioner's decision on the grounds which he stated for doing so." *Cole*, 288 F.3d at 151.  "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.  But the court in reviewing the Commissioner's decisions is not confined to the specific evidence that the ALJ noted in her decision. *See Lam v. Apfel*, 2000 WL 354393, at *3 (N.D. Tex. April 5, 2000) (Fitzwater, J.) (holding that substantial evidence in record supported ALJ's decision even though ALJ failed to cite specific evidence to support her conclusion); *Alvarado v. Astrue*, 2010 WL 3000766, at *1 (N.D. Tex. July 1, 2010) (Koenig, J.) (relying on evidence not cited by ALJ in relevant portion of decision).

As *Newton* requires, the court today affirms the Commissioner's decision based on the reasons set forth in the ALJ's decision.  But the court also holds that substantial evidence in the record supports the ALJ's decision.  And assuming *arguendo* that the ALJ's decision is procedurally imperfect, the court need not reverse where the Commissioner's decision is supported by substantial evidence. *See Qualls v. Astrue*, 339 Fed. Appx. 461, 464-65 (5th Cir. 2009) (per curiam) (holding that ALJ's procedural mistake was harmless error because the Commissioner's decision was based on substantial evidence).

substantial evidence to support a finding of at least a marked limitation as to four domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. R.M.C. does not appear to challenge the ALJ's findings with respect to R.M.C.'s ability to care for herself and her health and physical well-being.

IV

R.M.C. posits that the ALJ's finding that R.M.C. has less than marked limitation in the domain of acquiring and using information is not supported by substantial evidence.

In finding that R.M.C. has no limitation in acquiring and using information, the ALJ noted that nothing in the file suggests that R.M.C. has a speech problem and is unable to comprehend, and that the file contains a speech and language assessment within normal limits for R.M.C.'s age and academic exposure. R. 14. R.M.C. maintains that the ALJ only relied on a speech assessment that is irrelevant to the domain in question, and that the ALJ failed to consider R.M.C.'s and Durodoye's testimony, Durodoye's written statements, health records from Metrocare Services ("Metrocare"), and a special education assessment performed by the Desoto Independent School District ("Desoto ISD"). The Commissioner responds that the ALJ did consider this evidence and that the record as a whole supports the ALJ's finding regarding this domain.

In the domain of acquiring and using information, a preschooler is expected to "begin to learn and use the skills that will help [her] to read and write and do arithmetic," such as listening to stories, rhyming words, matching letters, counting, sorting shapes, building with blocks, painting, coloring, copying shapes, using words to ask questions, giving answers, following directions, describing things, and telling stories. 20 C.F.R. § 416.926a(g)(2)(iii). Some indicators that a child may have limited function in this domain include: (1) she cannot demonstrate understandings of words about space, size, or time (e.g., big/little); (2) she cannot rhyme words or the sounds in words; (3) she has difficulty recalling important things she learned in school yesterday; (4) she has difficulty solving mathematics questions; and (5) she talks only in short, simple sentences and has difficulty explaining what she means. 20 C.F.R. § 416.926a(g)(3).

The ALJ based her finding on a speech and language evaluation performed on October 17, 2007, when R.M.C. was three years old. R. 14, 217-218. The evaluation notes that standardized testing was done to assess R.M.C.'s functioning in receptive and expressive language. R. 217. Two licensed speech-language pathologists determined that R.M.C.'s scores on the tests reflected a mild auditory comprehension delay and average performance with expressive language resulting in a normal total language score. *Id.* R.M.C.'s areas of weakness were academic and included identifying

colors and shapes.  *Id.*  The speech pathologists did not recommend that R.M.C. receive speech therapy services at that time.  R. 218. R.M.C. argues that this evaluation is irrelevant to R.M.C.'s functionality in this domain because this domain focuses on the acquisition and use of knowledge, not speech intelligibility.  She posits that the relevant information for this domain includes her skills in listening, rhyming, matching letters and shapes, painting, coloring, copying shapes, using scissors, understanding opposites, remembering recent lessons, using proper sentences, and counting.  *Id.* at 7.  The Commissioner responds that the evaluation is relevant because it measured R.M.C.'s receptive (meaning, comprehension, listening, and understanding) and expressive language skills, not merely whether her speech could be understood.

The court holds that the evaluation is relevant at least to some extent in determining R.M.C.'s functioning in the domain of acquiring and using information.  The evaluation describes R.M.C.'s communication abilities, which have some impact on her ability to acquire and use information.  The regulations list as relevant a child's ability to put together words to make sentences, which is a communication skill.  Also, the evaluation notes that R.M.C. has a weakness related to identifying colors and shapes, which relates to this domain as well.  The ALJ did not cite other evidence in her analysis of this domain.

R.M.C. maintains that the ALJ failed to consider R.M.C.'s and

Durodoye's testimony, Durodoye's written statements, health records from Metrocare, and a special education assessment performed by Desoto ISD. The Commissioner responds that this is because the ALJ found some evidence not to be credible and other evidence not to be relevant to this domain. The court will address each type of evidence in turn.

First, R.M.C. contends that the ALJ should have considered R.M.C.'s and Durodoye's oral and/or written testimony. R.M.C. was four years old when the hearing was conducted. R.M.C.'s attorney asked her several questions related to this domain. When asked, R.M.C. could not recall her last name, address, school, or any of her classes at school. R. 26-29. But she was able to state her first name, birthday, telephone area code, and her grade in school, name a day of the week, and recognize that an opposite concept of the word "tall" is "small." *Id.* Durodoye testified that R.M.C.'s comprehension is very low and that she has to be asked questions in a certain way so that she is able to answer them. R. 35. For example, Durodoye testified that R.M.C. cannot understand the question, "When were you born?" but can understand and accurately answer the question, "What is your birthday?" *Id.* Durodoye also stated that R.M.C. sometimes remembers information but other times does not, and that R.M.C. can answer the telephone but cannot relay a message to Durodoye. R. 35, 37. Durodoye also completed a Child Function Report as part of R.M.C.'s SSI claim, and noted that, at

age three, R.M.C. talked partly in baby talk, did not use complete sentences most of the time, did not take part in conversations with other children, did not talk of things and activities that happened in the past, could not tell a made-up or familiar short story, could not answer questions about a short story, and could not deliver simple messages.  R. 109-10.  Durodoye also reported that R.M.C. could not recite numbers to three, count three objects, identify most colors and shapes, ask what words mean, recall her birthday or telephone number, define common words, read capital letters, or understand a joke.  R. 111.  The ALJ did not address this evidence directly in her decision.

Second, R.M.C. posits that the ALJ should have considered R.M.C.'s Metrocare records, in which psychiatrists and clinicians observed significant developmental delays, including, *inter alia*: R.M.C. was unable to verbalize her feelings, understand simple questions, follow simple commands, and demonstrate what she learned, and she operated at an 18-month-old developmental level. The ALJ noted the Metrocare records but did not reference any of the provider's comments that R.M.C. cites.  For example, Metrocare records indicated that R.M.C. could not verbalize her feelings (R. 204); when asked a question, she repeated the last word of the sentence and did not seem to understand questions (R. 213); she spoke baby talk or did not speak at all (R. 213); and she did not retain information that was taught by the clinician (R. 241).  Over

time, however, the clinicians noted that she would follow simple commands, but it was time consuming (R. 214); she would follow rules and complete instructions (R. 242); and she showed slow progress with recognizing emotions and breathing deeply (R. 315). The ALJ does not address these records other than to discuss Durodoye's parenting skills and needed improvements.  R. 18.

Third, R.M.C. argues that the ALJ did not address an evaluation performed by North Dallas Speech.  In the evaluation, the speech-language therapists concluded that R.M.C. has moderate receptive and expressive language delays and moderate articulation delays.  R. 337.  The Commissioner argues that moderate limitations are not marked limitations.

Fourth, R.M.C. contends that the ALJ did not consider testing conducted by the Desoto ISD performed in the spring of 2008.  As part of the evaluation, R.M.C. was given the Mullen Scales of Early Learning.  R. 432-34.  The evaluator noted that R.M.C. had average language skills, used age-level sentences, asked and answered simple questions, and followed one-step commands.  R. 421.  The evaluator further found that R.M.C. had trouble following commands without visual cues, identifying colors consistently, and staying on task with auditory tasks.  *Id.*  Finally, the evaluator noted that although R.M.C.'s listening skills were slightly delayed in comparison to her verbal skills, she was developing age-level vocabulary skills and was a very talkative and social child.  *Id.*

The Mullen Scales, however, revealed that R.M.C., who was 45 months at the time of the test, functioned: (1) at a 27 month level in the area of visual reception; (2) at a 33 month level in the area of fine motor; (3) at a 30 month level in the area of receptive language; and (4) at a 32 month level in the area of expressive language.  R. 432.  R.M.C.'s test scores were more than two standard deviations below the average score in three of the four areas: visual reception, fine motor, and receptive language.  R. 432.

Although the ALJ did not specifically mention in her decision the evidence on which R.M.C. relies, and while the ALJ certainly *could have* found in favor of R.M.C. when analyzing this domain, the court holds that there is substantial evidence to support the ALJ's finding that R.M.C. does not have a marked limitation in the area of acquiring and using information.  Substantial evidence need only be more than a mere scintilla; it need not be a preponderance. *See, e.g., Spellman,* 1 F.3d at 360.  To conclude that the ALJ lacked substantial evidence, the court must be able to conclude "that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Dellolio*, 705 F.2d at 125.  The evidence can even preponderate in favor of the claimant, and yet there still be substantial evidence to support the ALJ's findings. *See, e.g., Carry*, 750 F.2d at 482.  At the hearing, R.M.C. was able to accurately answer several questions about herself, and her

treatment records indicate slow, but consistent, progress and development.  Moreover, the Desoto ISD testing revealed that R.M.C. has average language skills, uses age-level sentences, asks and answers simple questions, and follows one-step commands.  And while a marked limitation may be evidenced by test results more than two standard deviations from the average, the court should not rely solely on test scores, however, because "[n]o single piece of information taken in isolation can establish whether [the child has] a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4)(i).  This ground therefore provides no basis on which to disturb the Commissioner's decision.

V

R.M.C. contends that the ALJ's finding that she had less than marked limitation in the domain of attending and completing tasks is not supported by substantial evidence.

In finding that R.M.C. had a less than marked limitation in this domain, the ALJ noted that R.M.C. has been diagnosed with ADHD and that the evidence indicates that she can be aggressive with other children when she perceives that she is not getting what she wants.  R. 15.  R.M.C. argues that the ALJ failed to consider Durodye's testimony and written statements, the Metrocare records, the North Dallas Speech records, and the special education assessment of Desoto ISD.  The Commissioner responds that while R.M.C. has ADHD and the corresponding limitations, the evidence

does not support a finding that R.M.C. has a marked limitation in this domain.

In the domain of attending and completing tasks, a preschooler is expected to pay attention when spoken to directly, sustain attention to play and learning activities, and concentrate on activities such as completing art projects. *See* 20 C.F.R. § 416.926a(h)(2)(iii). Some indicators that a child may have limited function in this domain include: (1) she is easily startled, distracted, or overreactive to stimuli; (2) she is slow to focus on or fails to complete activities of interest; (3) she repeatedly becomes sidetracked; (4) she is easily frustrated; and (5) she requires extra supervision to keep her engaged in an activity. *See* 20 C.F.R. § 416.926a(h)(3).

First, R.M.C. points to Durodye's testimony that R.M.C. has significant difficulty concentrating and refuses to participate in learning activities at home. R. 33. In her child function report, Durodye reported that R.M.C. cannot dress or bathe herself without help, does not put her toys away, and cannot pay attention to a task for 15 minutes. R. 113. The Commissioner responds that this evidence was contradicted by other proof, and that the ALJ can discredit subjective complaints if there are contradictory medical reports or daily activities. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (holding that it is within ALJ's discretion to discount claimant's complaints of pain based on medical reports and

claimant's daily activities).  Durodye testified that R.M.C.'s teacher reported improvement when R.M.C. took her ADHD medication, R. 34, and in her child function report, Durodye stated that R.M.C. eats with a fork and spoon, brushes her teeth with help, and dresses herself with help, R. 113.

Second, R.M.C. points to the Metrocare records, which indicated that R.M.C. had a very short attention span, would not follow directions, and did not understand the concept of taking turns.  R. 205, 211, 444.  Similarly, R.M.C. points to the North Dallas Speech evaluation, which indicated that R.M.C. was frequently off-topic and had significant difficulty maintaining her attention to tasks.  R. 336.  The Desoto ISD evaluation also noted that R.M.C.'s lack of self-help skills significantly interfered with her ability to meet regular academics.  R. 402.  Her teachers reported that R.M.C. had difficulty behaving appropriately in groups and struggled with working independently and completing tasks.  R. 393-94, 403-04.

The Metrocare clinician noted that, although R.M.C. took longer, with a few redirectives, she was able to stay put and listen to the clinician read five books.  R. 211.  Later, the Metrocare clinician noted that R.M.C.'s medication helped her stay on task.  R. 214.  On R.M.C.'s report card, her teacher gave her an "M" (for mastering the skill), the highest grade available, for practices self-control, cooperates with teacher, quiet at

appropriate times, and chooses activities independently and completes them. R. 394. Her teacher assigned R.M.C. an "M—" grade for listening, and an "I" (for improving), the middle grade available, for completes task in an appropriate amount of time and works well independently. *Id.* The Desoto ISD evaluation noted that R.M.C.'s teacher reported that R.M.C. has good days and is making normal progress, and that she has some behavior issues but none that overwhelms the class or prevents learning. R. 398. Substantial evidence supports the ALJ's finding that R.M.C. is not markedly limited in this domain.

VI

R.M.C. maintains that the ALJ's finding that R.M.C. has less than marked limitation in the domain of interacting and relating with others is not supported by substantial evidence. R.M.C. argues that the ALJ failed to consider Durodye's testimony and written statements, the Metrocare records, the North Dallas Speech records, and the special education evaluation by Desoto ISD. The Commissioner responds that the evidence indicates that R.M.C. is not markedly limited in this domain.

In the domain of interacting and relating with others, a preschooler is expected to be able to socialize with children and adults and to prefer playmates her own age. *See* 20 C.F.R. § 416.926a(i)(2)(iii). She is also expected to use words instead of actions to express herself and relate to caregivers with

increasing independence. *See id.* Some indicators that a child may have limited function in this domain include: (1) she does not reach out to be picked up and held by her caregiver; (2) she has no close friends; (3) she avoids people she knows; (4) she has difficulty playing games or sports with rules; (5) she has difficulty communicating with others; and (6) she has difficulty speaking intelligibly. *See* 20 C.F.R. § 416.926a(i)(3).

Durodye testified that R.M.C. can be very aggressive with other children, cannot take turns, and cannot play pretend. R. 36. Durodye reported that R.M.C. does not speak to other children and is possessive of her space and objects. R. 109, 112. The Metrocare clinicians indicated during R.M.C.'s first treatment session that she had deficient social skills. R. 196. The Metrocare records indicate that R.M.C. did not make progress in this area because she did not comprehend the concepts of taking turns, sharing, and following rules. R. 205. Third, the North Dallas Speech evaluation noted that Durodye reported that R.M.C. was aggressive towards other children and that she was disrespectful of authority. R. 336. Fourth, as part of the Desoto ISD evaluation, R.M.C. was administered the Vineland Adaptive Behavior Scales test to assess her social abilities. R. 430. R.M.C.'s scores in the areas of daily living skills, socialization, and motor skills were more than two standardized deviations below average. *Id.*

The Commissioner argues that R.M.C. showed improvement over time in this domain.  For example, the Metrocare clinician noted in July 2007 that R.M.C. acted out her feelings through tantrums instead of words, R. 204, but the Metrocare clinician reported in October 2007 that R.M.C. was able to identify emotions and was not having episodes of aggressive anger, R. 246, 286.  The Metrocare clinician noted in November 2007 that R.M.C. demonstrated that she understood the concepts of taking turns, sharing, name-calling, and following.  R. 314.  The clinician also indicated that R.M.C. was making greater progress because she was in a school setting and that she was learning to cope with some aggression and understand rules better.  *Id.*  The Metrocare records also indicate that R.M.C.'s teacher reported no negative behavior and that she was interacting socially, following rules, and not hitting as much.  R. 238, 241, 275.  Substantial evidence supports the ALJ's finding that R.M.C. is less than markedly limited in this domain.

## VII

R.M.C. maintains that the ALJ's finding that R.M.C. is not limited in the domain of moving about and manipulating objects is not supported by substantial evidence.

R.M.C. posits that the ALJ did not consider Durodye's written statements and the special education evaluation of Desoto ISD.  The Commissioner responds that substantial evidence supports the ALJ's finding concerning this domain.

In the domain of moving about and manipulating objects, a preschooler is expected to be able to run and walk with ease, climb stairs, complete puzzles, draw with crayons and markers, and manipulate buttons. *See* 20 C.F.R. § 416.926a(j)(2)(iii). Some indicators that a child may have limited function in this domain include: (1) she has muscle weakness, joint stiffness, or sensory loss; (2) she has difficulty coordinating gross motor movements; (3) she has difficulty climbing up and down stairs; (4) she has difficulty with sequencing hand and finger movements; (5) she has difficulty with fine motor movement, like gripping objects; and (6) she has poor eye-hand coordination when using a pencil or scissors. *See* 20 C.F.R. § 416.926a(j)(3).

Durodye reported that R.M.C. cannot catch a large ball, ride a tricycle, print letters, use scissors, or bathe without assistance. R. 112-13. R.M.C. also scored two standard deviations below average in fine motor control, R. 432, and was unable to run without falling or kick a ball, R. 430. But on R.M.C.'s report card, her teacher indicated that she had mastered large motor skills activities and could hold a crayon and a pencil appropriately. R. 394. In her special education evaluation with Desoto ISD, R.M.C. required no special accommodation for physical activities. R. 402-03.

Substantial evidence supports the ALJ's finding that R.M.C. is not limited in this domain.

Accordingly, because the ALJ's decision as to these four domains is supported by substantial evidence, R.M.C. is not entitled to relief on the basis of her first ground.

VIII

R.M.C. maintains that the ALJ's finding that she did not meet the criteria for listing 112.11 (ADHD) is not based on substantial evidence because the required analysis was not performed.

To meet listing 112.11, R.M.C. must have medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity that result in at least two of the following: marked impairment in age-appropriate cognitive/communicative functioning, marked impairment in age-appropriate social functioning, marked impairment in age-appropriate personal functioning, or marked difficulties in maintaining concentration, persistence, or pace. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing 112.11). The ALJ noted that the state agency medical personnel did not determine that R.M.C. had an impairment that met listing 112.11, and that no treating or examining physician had made findings that would satisfy the severity requirement for listing 112.11. R. 12. R.M.C. argues that she has marked limitations in the three required areas and in the four additional areas.[3]

---

[3]R.M.C. also argues that the ALJ was required to discuss the evidence offered in support of a finding that R.M.C. did not meet listing 112.11 and that the ALJ only concluded that the record did not show marked inattention, impulsiveness, and hyperactivity. R.M.C. recognizes, however, that a procedural error does not of

But as R.M.C. recognizes, there is no significant difference between the functional domains considered *supra* in §§ IV-VII and the findings required to meet listing 112.11. For example, evidence of a limitation in the domain of attending and completing tasks is evidence of inattention and limitation in concentration, persistence, or pace. And evidence of a limitation in the domain of interacting and relating with others is evidence of a limitation in social functioning. The court has already concluded that there is substantial evidence to support the ALJ's findings that R.M.C. is not markedly limited in the domains of attending and completing tasks or interacting and relating with others. It logically follows that there is substantial evidence to support the ALJ's finding that R.M.C. does not suffer from marked inattention and is not markedly limited in the areas of concentration, persistence, or pace, or social functioning. The court therefore declines to grant relief on R.M.C.'s second ground.

---

itself require remand where a child's substantive rights have not been violated. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam) (holding that "[t]he procedural improprieties alleged by [the claimant] will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."). The court holds that, if the ALJ committed a procedural error, it does not cast into doubt the existence of substantial evidence to support the ALJ's decision.

Finally, R.M.C. contends that the ALJ erred as a matter of law because she did not perform a required credibility analysis when she found that statements concerning the intensity, persistence, and limiting effects of R.M.C.'s symptoms are not credible to the extent they are inconsistent with the ALJ's findings. R. 13. R.M.C. argues that although an ALJ's credibility determinations are entitled to deference, the ALJ must give specific reasons for the credibility determination. The Commissioner responds that it was proper for the ALJ to discredit Durodye's statements that contradicted medical reports or daily activities. *See, e.g., Griego*, 940 F.2d at 945.

If the ALJ's decision is supported by substantial evidence, her determination of credibility is entitled to deference. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). R.M.C. cites *Prince v. Barnhart*, 418 F.Supp.2d 863 (E.D. Tex. 2005), to support her argument that the ALJ's decision must be sufficiently specific to make clear that she considered the proper factors in making the credibility determination. *See Prince*, 418 F.Supp.2d at 871 (holding that regulations are satisfied "when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered."). R.M.C. also cites *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994), to support her contention that the ALJ does not have to follow formulaic rules when assessing

subjective complaints. *Id.* at 164 (holding that "when the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints").

Regardless which standard controls, the court will only reverse the ALJ's decision where the claimant shows that she was prejudiced. *See Ripley*, 67 F.3d at 557. In other words, the court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of the claimant have been prejudiced. *See Smith*, 962 F. Supp. at 984. Even if the ALJ erred in not setting forth the regulatory standard for evaluating Durodye's subjective complaints, R.M.C. has not shown that she was prejudiced by this error. Because the court holds that the ALJ's decision is supported by substantial evidence, the court will not overturn the ALJ's decision even if it is procedurally imperfect. The court therefore declines to grant relief on R.M.C.'s third ground.

                    *       *       *

Accordingly, for the reasons explained, the Commissioner's decision is AFFIRMED.

May 11, 2011.

                              _____
                              SIDNEY A. FITZWATER
                              CHIEF JUDGE